<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STEPHEN AVETZUK, <br><br> Plaintiff, <br><br> v. <br><br> THE HERTZ CORPORATION, *et al.*, <br><br> Defendants. | Case No. 2:23-cv-22568 (BRM) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant The Hertz Corporation's ("Hertz") Motion to Dismiss *pro se* Plaintiff Stephen Avetzuk's ("Plaintiff") Second Amended Complaint (ECF No. 31) pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF Nos. 35–37) (the "Motion"). Plaintiff filed an Opposition to Hertz's Motion to Dismiss (ECF No. 42), and Hertz filed a Reply in support of its Motion (ECF No. 40). Having reviewed the submissions filed in connection with Hertz's Motion, and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Hertz's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF Nos. 35–37) is **GRANTED**.

**I.   BACKGROUND**

   **A.   Factual History**

For the purpose of the motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*,

114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

In his Second Amended Complaint, Plaintiff alleges that he was employed by Hertz as a Senior Auditor from on or about May 11, 2021, to on or about September 12, 2022. (ECF No. 31 ¶¶ 6–7.) As a Senior Auditor, Plaintiff was "responsible for auditing and identifying malfeasance and risks and reporting said items to his superiors." (*Id.* ¶ 7.)

Plaintiff alleges he was working on a corporate airport audit in Indianapolis, Indiana during the week of August 15, 2022 (the "Airport Audit"). (*Id.* ¶ 12.) Plaintiff alleges that he found the existing audit program lacking, so he "expanded the audit program" to make suggestions as to ways Hertz could improve its audits to prevent violations of The Raechel and Jacqueline Houck Safe Rental Car Act, H.R. 22, 114th Congress (2015)[1] (the "Houck Act"). (*Id.* ¶¶ 14–15.) Through his expanded audit, Plaintiff discovered Hertz allegedly had rented out a vehicle "that had an open work order with a mechanical recall . . . but no record of its repair." (*Id.* ¶ 15a.) Plaintiff asserts he reported his findings to the manager heading the Airport Audit, who told Plaintiff these findings were outside the scope of the audit and would not be put in the audit report. (*Id.* ¶ 16.) Plaintiff asserts he contacted his manager's supervisor as well as a human resources representative with his findings. (*Id.* ¶¶ 17–18.) Plaintiff met with the human resources representative, and during this meeting, Plaintiff made clear he intended to contact Hertz's CFO to discuss "problems in the Audit Department." (*Id.* ¶ 19.) Two weeks later, upon returning from his pre-approved vacation, Plaintiff was terminated on September 12, 2023. (*Id.* ¶ 21.)

---

[1] 2015 Amendments to 49 U.S.C. § 30101. Pub. L. 114-94, Div. B, Title XXIV, § 24109(a), Dec. 4, 2015, 129 Stat. 1706, provided that: "This section [amending 49 U.S.C.A. §§ 30102, 30120, 30122, and 30166, and enacting provisions set out as notes under 49 U.S.C. § 30102] may be cited as the 'Raechel and Jacqueline Houck Safe Rental Car Act of 2015.'"

Plaintiff contends he was fired out of retaliation and "as a precaution in case he became a whistleblower detailing Hertz's alleged criminal activities to the various government agencies." (*Id.* ¶ 22.) Plaintiff alleges Hertz sent him a "malicious termination letter," which Plaintiff contends was lacking detail but characterized Plaintiff as a "misogynist predator with violent overtones" in an effort to discredit him. (*Id.*) Plaintiff alleges he endured a hostile work environment, despite "receiv[ing] no negative feedback until he was put on a Performance Improvement Program (PIP)." (*Id.* ¶¶ 24–55.)

Plaintiff further alleges Hertz incorrectly reported Plaintiff's residency for unemployment purposes as Florida, despite being aware Plaintiff resided in New Jersey and had not requested his residency be changed. (*Id.* ¶¶ 56–67.) When Plaintiff filed for New Jersey unemployment benefits, he was "rejected on the grounds that his employer Defendant Hertz, failed to contribute to [Plaintiff's] unemployment account." (*Id.* ¶ 66.) Plaintiff brings claims for violation of the Conscientious Employees Protection Act ("CEPA") (Count One), intentional infliction of emotional distress (Count Two), respondeat superior (Count Three), negligent hiring (Count Four), violation of the Worker Health and Safety Act, N.J. Stat. Ann. § 34:6A-3 (Count Five), and violation of N.J. Stat. Ann. §§ 43:21-16(3) and -7 for unemployment compensation offenses and contributions (Count Six).

### B. Procedural History

Plaintiff filed his initial Complaint in the Superior Court of New Jersey Law Division, Essex County under docket number ESX-L-005870-23 on September 9, 2023. (ECF No. 1.) On October 10, 2023, Plaintiff filed an Amended Complaint, which he served on Hertz on October 23, 2023. (*Id.*) Hertz removed this action to the United States District Court for the District of New Jersey on November 21, 2023. (*Id.*)

Hertz filed a motion to dismiss the Amended Complaint on December 28, 2023. (ECF Nos. 5–6.) In response to Plaintiff's request for an extension to respond to Hertz's motion (ECF No. 17), the Court granted Plaintiff leave to file a Second Amended Complaint (ECF No. 19), which Plaintiff filed on June 14, 2024 (ECF No. 31). Hertz filed its Motion to Dismiss the Second Amended Complaint on July 15, 2024. (ECF Nos. 35–37.) Plaintiff filed his Opposition on August 5, 2024 (ECF No. 42), and Hertz filed a Reply in support of its Motion to Dismiss on August 12, 2024 (ECF No. 40).[2]

## II.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478

---

[2] Plaintiff additionally filed a motion for an order to dismiss Hertz's reply in support of its Motion (ECF No. 40) on the ground that Hertz violated Fed. R. Civ. P. 27 (ECF No. 43), which the Court considers to be a sur reply. While a sur reply is typically impermissible, given the leniency afforded to *pro se* litigants, the Court considers the substance of Plaintiff's sur reply. *See* L. Civ. R. 7.1; *Washington v. Ellis*, Civ. A. No. 17-07243, 2021 WL 2982175, at *2 (D.N.J. July 15, 2021) ("It is well settled that [a] pro se plaintiff is entitled to a certain degree of leniency so as to ensure that her case is decided on its merits rather than a procedural technical[ity]." (alterations in original) (internal quotation marks and citations omitted)). The Court however notes that Plaintiff has not identified how or why he contends Defendant violated Fed. R. Civ. P. 27, which governs depositions to perpetuate testimony and seemingly is inapplicable to this matter. (*See generally* ECF No. 43.)

U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out

"sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show the allegations of his or her complaints are plausible. *See id.* at 670.

### III. DECISION

#### A. Plaintiff's Retaliation Claims under CEPA

Hertz contends Plaintiff's retaliation claim under CEPA must be dismissed because Plaintiff has failed to plead sufficient facts to state a claim that is plausible on its face. (ECF No. 36 at 4.) Hertz argues Plaintiff has not pleaded facts sufficient to demonstrate the first, second, and fourth elements of retaliation under CEPA. (*Id.* at 4–5.) Plaintiff responds that Hertz's argument is "ridiculous," and cites allegations from the Second Amended Complaint to support each element of CEPA. (ECF No. 42 at 4–10.) The Court finds Plaintiff fails to plead facts sufficient to meet the first element of retaliation under the CEPA, and therefore Plaintiff's claim must be dismissed.

It is well-settled under CEPA, N.J. Stat. Ann. §§ 34:19-1, *et seq.*, that an employer may not take retaliatory action against an employee who "[o]bjects to, or refuses to participate in any activity, policy[,] or practice which the employee reasonably believes . . . is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment." N.J. Stat. Ann. § 34:19-3(c). To state a claim under CEPA, the New Jersey Supreme Court has explained that a plaintiff must sufficiently allege: (1) a reasonable belief the complained-of employer conduct violated a law, rule, regulation, or public policy, or is fraudulent or criminal; (2) whistleblowing activity; (3) an adverse employment action; and (4) a causal connection between the whistleblowing activity and the adverse employment action. *See Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003); *Young v. Twp. of Irvington*, 629 F. App'x 352, 356 (3d

Cir. 2015). "'The initial burden of making a prima facie [CEPA] case is relatively easy to meet,' and is satisfied 'when sufficient evidence is offered such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons.'" *Griffin v. Metromedia Energy, Inc.*, Civ. A. No. 10-03739, 2011 WL 12872504, at *2 (D.N.J. Feb. 7, 2011) (quoting *Bowles v. City of Camden*, 993 F. Supp. 255, 264–65 (D.N.J. 1998)). Indeed, the New Jersey Supreme Court has described CEPA as "remedial legislation . . . [which] 'should be construed liberally to effectuate its important social goal.'" *Dzwonar*, 828 A.2d at 901 (quoting *Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958, 971 (N.J. 1994)).

> **i. Plaintiff pleaded no facts showing that he reasonably believed Hertz's alleged conduct violated a law, rule, regulation, or public policy**

Hertz argues Plaintiff's CEPA claim fails because Plaintiff has not pleaded any facts demonstrating he reasonably believed Hertz's alleged conduct violated a law, rule, regulation, or public policy. (ECF No. 36 at 5–7.) Hertz acknowledges Plaintiff references the Houck Act but contends Plaintiff's "vague allegation of a car with an open work order" and "methods Plaintiff suggested 'to avert a potential problem' under the Houck Act" are insufficient to support Plaintiff's claim. (*Id.* at 5.) Plaintiff responds by pointing to allegations in the Complaint that Hertz actually violated the Houck Act by illegally renting a car on the recall list. (ECF No. 42 at 6–7.) Hertz further contends the language of Paragraphs 15 and 16 of the Second Amended Complaint make clear "Plaintiff had no reasonable belief that Hertz violated the Houck Act." (ECF No. 40.)

Under CEPA, a plaintiff should allege an identifiable "statute, regulation, rule or public policy that closely relates to the complained-of conduct." *Pierre v. Otsuka Am. Pharm.*, Civ. A. No. 23-21848, 2024 WL 1704847, at *7 (D.N.J. Apr. 19, 2024) (quoting *Dzwonar*, 828 A.2d at

901). "[I]t is critical to identify the evidence that an aggrieved employee believes will support the CEPA recovery with care and precision. Vague and conclusory complaints . . . are not the sort of things that the Legislature intended to be protected by CEPA." *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 627 (N.J. 2013). However, a court can, on its own, identify the law or policy that might have been implicated by the challenged conduct so long as the plaintiff alleges sufficient details. *See Griffin*, 2011 WL 12872504, at *3; *accord Scioscia v. Walmart Corp.*, Civ. A. No. 23-01940, 2023 WL 8237407, at *2 (D.N.J. Nov. 28, 2023). The allegedly unlawful behavior must be more than a private dispute between the employee and the employer. *Mehlman v. Mobil Oil Corp.*, 707 A.2d 1000, 1013 (N.J. 1998).

A plaintiff need not allege an actual legal violation but a *reasonable belief* the challenged employer conduct constituted a violation. *See Arterbridge v. Wayfair, LLC*, Civ. A. No. 21-13306, 2022 WL 577956, at *3 (D.N.J. Feb. 25, 2022). "On a motion to dismiss in a CEPA case, it is the Court's role to 'make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff.'" *Myers v. Advanced Stores Co. Inc.*, Civ. A. No. 19-18183, 2020 WL 2744632, at *4 (D.N.J. May 27, 2020) (quoting *Dzwonar*, 828 A.2d at 901). Said another way, there must be a close relationship between the alleged misconduct and the supposedly violated law or public policy. *Telger v. Glob. Spectrum*, 291 F. Supp. 3d 565, 581 (D.N.J. 2018). In order for the court to make this determination, "[p]laintiffs are required to identify with a minimum amount of specificity the law or public policy that they believe was violated." *Safonof v. DirectSat USA*, Civ. A. No. 19-07523, 2020 WL 1527946, at *3 (D.N.J. Mar. 31, 2020). "When none is forthcoming, the trial court should 'enter judgment for [the] defendant.'" *Paskas v. United Parcel Serv., Inc.*, Civ. A. No. 23-01162, 2024 WL 4345208, at *6 (D.N.J. Sept. 30, 2024), *appeal filed*, No. 24-02997 (3d Cir. Oct. 29,

2024) (alteration in original) (quoting *Gaglione v. New Cmty. Corp.*, Docket No. A-1015-06, 2007 WL 2141429, at *3 (N.J. App. Div. July 27, 2007)) (granting defendant's motion to dismiss in part because plaintiff failed to "adequately identify a law, or rule or regulation promulgated pursuant to law, or a clear mandate of public policy that bears a 'substantial nexus' to his claim"); *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505, 513 (N.J. 1980) ("If an employee does not point to a clear expression of public policy, the court can grant a motion to dismiss or for summary judgment.").

Here, the Court finds Plaintiff has failed to adequately identify a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy that bears a "substantial nexus" to his claim. In his Amended Complaint, Plaintiff alleges Hertz violated the Houck Act when his supervisor refused to look further into whether Hertz had rented a vehicle on the manufacturer's recall list with an open work order but no history of its repair. (ECF No. 31 ¶¶ 15–15a.) Plaintiff alleges he took it upon himself to expand Hertz's audit program to "prove the *risk* of vehicles that [were] rented with open work orders that were on the manufacturer's recall list," which is illegal pursuant to the Houck Act. (*Id*. ¶ 15 (citing 49 U.S.C. § 30101) (emphasis added).) Plaintiff has not identified any vehicles that he contends actually violated the Houck Act.[3]

---

[3] The Court recognizes Plaintiff's Amended Paragraph 15a, which notes that prior to his termination, Plaintiff discovered "an active rental that had an open work order with a mechanical recall on the car in its history but no record of its repair." (ECF No. 31 ¶ 15a.) However, Plaintiff appears to allege only that the rental of this vehicle potentially violates the Houck Act. While Plaintiff contends this was an "illegal rental," he has provided no factual basis for this assertion. Plaintiff does not allege he confirmed this vehicle rental was illegal; rather, based solely on the fact there was an active rental with an open work order for a mechanical recall but no history of repair, he reported it for further investigation. While Plaintiff may have suspected this was an illegal rental, he provides no factual support for this conclusion and thus had no reasonable basis to believe that was actually an illegal rental pursuant to the Houck Act. *See Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) ("Although we must accept the allegations in the complaint as true, 'we are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007))).

Rather, Plaintiff's alleged actions indicate his concern for future issues, alleging he indicated to his supervisor that "it would be prudent to test rentals with open work orders and recalls to avert a *potential* problem since renting cars on recall was illegal per [the Houck Act]." (*Id*. ¶ 16 (emphasis added).) The Court's own reading of the Houck Act reveals there are a number of exceptions to the general rule that a rental car subject to a manufacturing recall must be repaired immediately. *See* 49 U.S.C. §§ 30120(i)(3)(B) (outlining a special rule for large vehicle fleets), (C) ("If a notification required under subsection (b) or (c) of section 30118 indicates that the remedy for the defect or noncompliance is not immediately available and specifies actions to temporarily alter the vehicle that eliminate the safety risk posed by the defect or noncompliance, the rental company, after causing the specified actions to be performed, may rent . . . the motor vehicle."). Plaintiff specifically notes that "he thought not reporting the illegal rental for further research [was] irresponsible." (ECF No. 31 ¶ 16.) This allegation indicates that, while Plaintiff may have believed the rental was possibly illegal under the Houck Act, Plaintiff himself recognized that the issue needed "further research." (*Id*.) Without additional allegations that clearly link Hertz's rental of a car on the manufacturer's recall list with an open work order and the requirements imposed by the Houck Act, the Court cannot infer there is a substantial nexus between the complained-of conduct and the law identified by Plaintiff. *See Safonof*, 2020 WL 1527946, at *4 ("Nevertheless, [p]laintiff's [c]omplaint fails because it lacks factual specificity to establish a substantial nexus between the alleged conduct and the supposed violations. The [c]omplaint does not plainly specify the ways in which said statutes were violated. It merely provides, as [d]efendant states, 'a laundry list' of nine statutes followed by the conclusory statement that [d]efendant's actions violated all of them as well as common law fraud. It does not clearly link [complained of] behavior to the offenses or describe the statutes in any way."). Because

10

Plaintiff fails to demonstrate a substantial nexus between the complained-of conduct and the Houck Act, Hertz's Motion to Dismiss is **GRANTED,** and Plaintiff's CEPA claim (Count One) is **DISMISSED**.

### B. Plaintiff's Intentional Infliction of Emotional Distress Claim

Hertz argues Plaintiff's claim for intentional infliction of emotional distress ("IIED") should be dismissed because Plaintiff fails to plead sufficient facts to meet the high bar required for "outrageous" conduct necessary to establish an IIED claim. (ECF No. 36 at 10–11.) Hertz further asserts Plaintiff's IIED claim should be dismissed as barred by CEPA's waiver provision. (*Id*. at 12.) Plaintiff contends "Hertz's unemployment benefits fraud and related actions" demonstrate Hertz's outrageous behavior to satisfy the standard for IIED. (ECF No. 42 at 10–11.)

To bring a claim for IIED under New Jersey law, "a plaintiff must show that: (1) defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the conduct proximately caused plaintiff's emotional distress, and (4) the emotional distress was 'so severe that no reasonable [person] could be expected to endure it.'" *Johnson v. City of Hoboken*, 299 A.3d 856, 864 (N.J. App. Div. 2023) (alteration in original) (quoting *Ingraham v. Ortho-McNeil Pharm.*, 25 A.3d 1191, 1195 (N.J. App. Div. 2011)). The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Forsman v. Dykstra*, Civ. A. No. 21-08181, 2023 WL 3145165, at *6 (D.N.J. Apr. 28, 2023) (quoting *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988)). "Courts refer to it as an 'elevated threshold' which is 'satisfied only in extreme cases.'" *Id.* (quoting *Ingraham*, 25 A.3d at 1195).

In addition, a plaintiff must plead severe emotional distress amounting to "severe and disabling emotional or mental condition[s] which may be generally recognized and diagnosed by

trained professionals." *Turner v. Wong*, 832 A.2d 340, 348 (N.J. App. Div. 2003). A plaintiff must plead something more than "[m]ere allegations of 'aggravation, embarrassment, an unspecified number of headaches, and loss of sleep.'" *Id.* (quoting *Buckley*, 544 A.2d at 864); *see also Krugman v. Mazie Slater Katz & Freeman, LLC*, Docket No. A-2611-13, 2015 WL 1880073, at *8 (N.J. App. Div. Apr. 27, 2015) (dismissing plaintiff's claim for IIED, in part, for failure to plead how the alleged conduct affected her life or her daily routine).

"[T]he limited scope of th[is] tort tolerates many kinds of unjust, unfair and unkind conduct." *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991) (citation omitted). Indeed, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for the tort of intentional infliction of emotional distress." *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 348 (D.N.J. 2006) (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (citing *Griffin v. Tops Appliance City*, 766 A.2d 292, 297 (N.J. 2001)). "The mere fact that the [d]efendants acted for an improper purpose does not give rise to an actionable claim." *Id.* (alteration in original) (quoting *Marrero v. Camden Cnty. Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 479 (D.N.J. 2001)). "[A]llegations of sexual harassment, discrimination, or improperly motivated discharge, cannot alone provide the basis for an intentional infliction of emotional distress claim." *Id.* (quoting *Marrero*, 164 F. Supp. 2d at 479). Moreover, claims regarding employment decisions fail to state a claim for IIED as a matter of law. *See id*. (citing *Borecki v. E. Int'l Mgmt. Corp.*, 694 F. Supp. 47, 61 (D.N.J. 1988)).

In *Cox*, the defendant-employer terminated the plaintiff's employment the day he returned to work following a triple bypass surgery. 861 F.2d at 391. The Third Circuit found the defendant-employer knew the plaintiff's recovery was incomplete, and the plaintiff's medical and disability

12

benefits might be affected. *Id.* at 395. The Court of Appeals also determined the defendant-employer likely knew termination "endanger[ed] his chances of collecting medical and disability benefits" and would hurt the plaintiff's chances of finding alternative employment. *Id*. Nonetheless, the Third Circuit held the defendant-employer's actions "d[id] not appear to rise to the level of outrageousness" required, even if the defendant-employer dismissed the plaintiff with an improper motive. *Id*. at 396.

Here, the Court similarly finds Plaintiff does not state a claim for IIED because he does not allege outrageous behavior on the part of Hertz. Plaintiff alleges Hertz's "unemployment benefits fraud" demonstrates Hertz's outrageous behavior and caused Plaintiff to "develop headaches, insomnia, excessive weight gain from compulsive eating, anxiety attacks, depression, trust issues and a general sense of hopelessness." (ECF No. 31 ¶ 88.) Even considering Plaintiff's allegations of emotional distress, Hertz's conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Jewett v. IDT Corp.*, Civ. A. No. 04-01454, 2008 WL 508486, at *4 (D.N.J. Feb. 20, 2008) (internal quotations and citations omitted). While it may have been improper for Hertz to designate Plaintiff's address as Florida and not New Jersey, thereby not contributing to New Jersey unemployment funds, this behavior does not rise to the level of outrageous as defined by New Jersey law. *See Andre v. Walgreen Co.*, Civ. A. No. 12-05413, 2014 WL 1215635, at *2 (D.N.J. Mar. 24, 2014) ("No act allegedly committed against Plaintiff, including the suspension, termination, and deprivation of unemployment benefits[,] rise[s] to the level of being 'utterly intolerable in a civilized society,' as required by the Third Circuit." (citing *Cox*, 861 F.2d at 395)); *see also Dupell v. Franklin Towne Charter Sch.*, Civ. A. No. 16-00278, 2016 WL 7042068, at *9 (D.N.J. Dec. 2, 2016) (finding plaintiff's allegations defendants created

13

a hostile work environment by taking actions such as publicly denigrating plaintiff, inaccurately telling plaintiff he would be replaced as principal, issuing plaintiff a poor performance evaluation, and rejecting plaintiff's new hire were insufficient to sustain plaintiff's IIED claim).

Moreover, Plaintiff failed to allege he sought treatment for his emotional distress. *See Barboza v. Greater Media Newspapers*, Civ. A. No. 07-00635, 2008 WL 2875317, at *6 (D.N.J. July 22, 2008) ("Plaintiffs must assert that Barboza sought treatment for her alleged distress."); *Mardini v. Viking Freight, Inc.*, 92 F. Supp. 2d 378, 384–85 (D.N.J. 1999) (granting motion to dismiss IIED claim because plaintiff did not seek medical assistance or allege specific ailments); *Harris v. Middlesex Cnty. Coll.*, 801 A.2d 397, 406–07 (N.J. App. Div. 2002) (affirming IIED dismissal where plaintiff failed to allege need for psychiatric counseling). Therefore, Plaintiff's claim for IIED (Count Two) is **DISMISSED**.

### C. Plaintiff's Respondeat Superior Claim

Hertz argues Plaintiff's respondeat superior claim should be dismissed because it asserts a theory of liability, not a cause of action. (ECF No. 36 at 13.) Plaintiff responds by citing to several laws Plaintiff contends Hertz violated through its "intentional unemployment fraud scheme." (ECF No. 42 at 11–12.)

The Court agrees with Hertz that Plaintiff's respondeat superior claim must be dismissed because it is not a standalone cause of action. *See DiAntonio v. Vanguard Funding, LLC*, 111 F. Supp. 3d 579, 585 (D.N.J. 2015) ("[T]here is no separate cause of action for respondeat superior."); *Merman v. City of Camden*, 824 F. Supp. 2d 581, 598 n.31 (D.N.J. 2010) (dismissing respondeat superior claim because "to the extent plaintiff alleges respondeat superior as a separate cause of action, it is simply redundant"); *Tammy v. Carnival Cruise Lines*, Civ. A. No. 13-04716, 2015 WL 7069654, at *5 (D.N.J. Nov. 13, 2015) ("Plaintiffs' respondeat superior claim is insufficiently

developed, and appears to this Court to be an alternative theory of Defendant's liability, not a standalone claim."); *Altisource S.A.R.L. v. Szumanski*, Civ. A. No. 21-03293, 2023 WL 6797192, at *3 (D.N.J. Mar. 15, 2023) (dismissing plaintiff's respondeat superior claim because it was not an independent claim); *Khalil v. City of Paterson*, Civ. A. No. 18-03241, 2018 WL 6168191, at *9 (D.N.J. Nov. 26, 2018) ("To the extent [p]laintiff pleads the respondeat superior count as a standalone claim . . . there is no such independent cause of action."). Because respondeat superior is not an independent cause of action, Count Three of Plaintiff's Second Amended Complaint is **DISMISSED**.

### D. Plaintiff's Negligent Hiring Claim

Hertz argues Plaintiff's negligent hiring claim should be dismissed because it is barred by the exclusive remedy provision in the New Jersey Workers' Compensation Act ("NJWCA"). (ECF No. 36 at 13–14.) Plaintiff responds that his negligent hiring claim is not barred because Plaintiff's damages "were intentionally inflicted or the employer knew that their actions would cause harm to their employee." (ECF No. 42 at 12.)

"New Jersey courts 'recognize the tort of negligent hiring, where the employer either knew or should have known that the employee was violent or aggressive, or that the employee might engage in injurious conduct toward third persons.'" *Brijall v. Harrah's Atl. City*, 905 F. Supp. 2d 617, 620 (D.N.J. 2012) (quoting *Davis v. Devereux Found.*, 37 A.3d 469, 483 (N.J. 2012)). To establish a prima facie cause of negligent hiring and retention, a plaintiff must establish: (1) "the employer must have had knowledge that the employee is dangerous or unfit," and (2) "the employer's negligence in hiring the employee, the employee's dangerous characteristics or unfitness must have caused the injury." *K.G. v. Owl City*, Civ. A. No. 17-08118, 2023 WL 3735891, at *7 (D.N.J. May 31, 2023) (citing *Lingar v. Line-In Companions, Inc.*, 692 A.2d 61,

15

65 (N.J. App. Div. 1997)). Thus, there is an element of foreseeability, which requires a plaintiff to "show that the person's prior conduct somehow foreshadowed the actual harm [the plaintiff] suffered." *Maddox v. City of Newark*, 50 F. Supp. 3d 606, 636 (D.N.J. 2014).

"An employee cannot, however, assert negligent hiring and supervision against an employer," because "[u]nder Jersey law an action in negligence against an employer is barred by the [NJWCA]." *Silvestre v. Bell Atl. Corp.*, 973 F. Supp. 475, 486 (D.N.J. 1997), *aff'd*, 156 F.3d 1225 (3d Cir. 1998). "The NJWCA 'provides the sole remedy under which a plaintiff may seek a remedy for negligent conduct by an employer or co-employee.'" *Ruggiero v. Eli Lilly & Co.*, Civ. A. No. 19-16206, 2022 WL 17082498, at *8 (D.N.J. Nov. 18, 2022) (quoting *Piantadosi v. Pub. Serv. Elec. & Gas Co.*, Docket No. A-2778-08, 2011 WL 3177318, at *14 (N.J. App. Div. July 28, 2011)). This is true regardless of the injury alleged. *See Cremen v. Harrah's Marina Hotel Casino*, 680 F. Supp. 150, 155–56 (D.N.J. 1988) (finding plaintiff's allegation of negligent hiring and retention barred by exclusive remedy provision of the NJWCA); *see also Silvestre*, 973 F. Supp. at 486 (holding "[a]n employee cannot . . . assert negligent hiring and supervision against an employer" where the underlying injury was based in discrimination).

Plaintiff argues his claim constitutes an exception to the NJWCA because Hertz committed an intentional wrong. (ECF No. 42 at 12–13.) This argument fails on its face because it is clear Plaintiff's negligent hiring count is based in negligence—not an intentional act. (*See* ECF No. 31 ¶ 109 ("Through Hertz's *negligence* in hiring, retaining and supervising the above employees, the lack of fitness, incompetence and dangerous attributes of the above employees proximately caused [Plaintiff] to suffer severe emotional harm." (emphasis added)).) Nor does Plaintiff show Hertz's conduct met the intentional-wrong standard for overcoming the exclusivity of the NJWCA remedy. Plaintiff does not allege sufficient evidence that Hertz knew or should have known the claimed

injury would occur. *See Beaman v. Bank of Am., N.A.*, Civ. A. No. 21-20561, 2023 WL 4784254, at *19 (D.N.J. July 27, 2023) (dismissing negligent hiring, supervision, and retention claim where plaintiffs only generally alleged defendant failed to conduct background checks or take other security measures when hiring employees because such allegations did not indicate defendant knew or should have known the employees hired and retained were "violent or aggressive" or "might engage in injurious conduct" and were insufficient to establish reasonable foreseeability). Therefore, Plaintiff's Count Four—negligent hiring—is **DISMISSED**.

### E.  Plaintiff's Claim under the New Jersey Worker Health and Safety Act

Hertz contends Plaintiff's claim under the New Jersey Worker Health and Safety Act ("NJWHSA"), N.J. Stat. Ann. § 34:6A-3, must be dismissed because this Court has held there is no private right of action available to Plaintiff under this statute. (ECF No. 36 at 14 (citing *Hamza v. United Cont'l Holdings, LLC*, Civ. A. No. 19-08971, 2021 WL 3206814, at *6 (D.N.J. July 29, 2021).) Plaintiff contends an employee may still sue their employer under NJWHSA "if the damages received by the Plaintiff were intentionally inflicted or the employer knew that their actions would cause harm to their employee(s)." (ECF No. 42 at 12–13.)

However, Plaintiff provides no authority for this assertion. Plaintiff instead cites *Millison v. E.I. du Pont de Nemours & Co.*, 501 A.2d 505 (N.J. 1985) for the proposition that "[u]nder the Workers Compensation Act an employee can sue their employer under Workman's Comp claims if the damages received by the Plaintiff were intentionally inflicted or the employer knew that their actions would cause harm to their employee(s)." (ECF No. 42 at 12–13.) This argument fails both because it does not address whether NJWHSA provides private cause of action and also because Plaintiff's asserted authority does not relate to a claimed cause of action under the NJWHSA. *See*

17

*generally Millison*, 501 A.2d at 519 (holding the NJWCA does not bar plaintiffs' *common-law* cause of action for intentional wrongs).

Moreover, and as argued by Hertz, the District Court of New Jersey has already held that "there is no private cause of action available to an individual . . . under [N.J. Stat. Ann. § 34:6A-3]." *Hamza*, 2021 WL 3206814, at *6; *cf. Lepore v. Nat'l Tool & Mfg. Co.*, 540 A.2d 1296, 1298–99 (N.J. App. Div. 1988) (noting N.J.S.A. § 34:6A-3 "has long been a right protected by common law"). Because there is no private right of action available to Plaintiff under the NJWHSA, Plaintiff's claim under the NJWHSA (Count Five) is **DISMISSED**.

### F. Plaintiff's Claim under the New Jersey Unemployment Compensation Act

Hertz asserts Plaintiff's claim under the New Jersey Unemployment Compensation Act should similarly be dismissed because "Plaintiff again attempts to bring a private right of action where none exists." (ECF No. 36 at 15.) Hertz argues that no private right of action exists under either N.J.S.A. §§ 43:21-16(b)(3) or 43:21-17. (*Id*.) In response, Plaintiff admits that he has "no intention to recover directly from any unemployment claim." (ECF No. 42 at 13.) Because Plaintiff states he is not trying to proceed under the New Jersey Unemployment Compensation Act, Count Six of the Second Amended Complaint is **DISMISSED**.

The Court will grant Plaintiff leave to amend his Second Amended Complaint based on his *pro se* status and the absence of an equitable reason to deny such leave. The Federal Rules of Civil Procedure generally require the Court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. Courts also generally grant *pro se* plaintiffs, like Plaintiff here, leave to amend where possible. *See Gambrell v. Arias*, Civ. A. No. 14-6758, 2015 WL 13647384, at *1 (D.N.J. May 5, 2015) (stating that "[b]ased on Plaintiffs' *pro se* status, I will give them leave to amend their complaint"); *Pydeski v. Aetna Ins. Co. Disability Servs.*, Civ. A. No. 18-15305, 2019 WL

18

13396864, at *2 (D.N.J. Sept. 4, 2019) (noting that "courts in this Circuit are required to grant a *pro se* Plaintiff leave to amend a deficient Complaint unless amendment would be inequitable or futile"); *Johnson v. Performance Food Grp.*, Civ. A. No. 10-3742, 2010 WL 4668346, at *3 (D.N.J. Nov. 5, 2010) ("In light of Plaintiff's *pro se* status, Plaintiff is hereby granted leave to amend his complaint to cure the pleading deficiencies."). The Court will therefore allow Plaintiff to amend the Second Amended Complaint to ensure Plaintiff has a fair opportunity to state his claims in this matter.

IV. **CONCLUSION**

For the reasons set forth above, Hertz's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF Nos. 35–37) is **GRANTED**. An appropriate order follows.

Date: February 20, 2025       */s/ Brian R. Martinotti*
                              **HON. BRIAN R. MARTINOTTI**
                              **UNITED STATES DISTRICT JUDGE**